Good morning, Ben Coleman for the appellant, Gaston Brown. I'd like to begin with the instructional error as to the intent to defraud element, and I think we can narrow the issues as to that element. First, the government concedes that there was both error and that the error was plain. So the first two prongs of the plain error test are conceded. The government also concedes that if count four, which required the intent to defraud, has to be reversed and also count five also has to be reversed. So that's conceded. So we're really talking about the third and fourth prongs of the plain error test. And I think under this court's precedent the third and fourth prongs really go together. If a defendant can show prejudicial instructional error at the third prong, then he's going to be entitled to relief under the fourth prong as well. I'm not aware of a Ninth Circuit case that says a defendant in the instructional error context who can make it through the first three prongs somehow doesn't get relief under the fourth prong, and the government hasn't cited any such case either. So we're really focused on the third prong of the plain error test. And in this case, under these circumstances, even assuming that the evidence was sufficient, that there was sufficient evidence presented by the government of an intent to defraud, that does not mean that it was a foregone conclusion and that the jury would have had to have found or would obviously have found an intent to defraud, particularly under the circumstances of this case. At the trial, the government never really articulated its theory as to whom the indictment certainly didn't allege who the victim of the fraud was. Now on appeal, the government seems to be saying that American Express was the victim, but they never argued that at trial. The only thing they mentioned very briefly was that the people that Mr. Brown was paying, like the airlines or the rental car company, that they may have been the victims of the fraud. But I think the government's now taking a different theory that American Express was the victim of the fraud. Well, take us through your theory of who you think the victim is and why the evidence, the actual evidence in this case, isn't sufficient to show intent to deceive and cheat. Because there are lots and lots of fraud cases where the two, the evidence on the two elements collapse together, right? If you meet one, the evidence also meets the other. And I'm going to assume for the sake of argument that the evidence was sufficient, that there was sufficient evidence to sustain the verdict. The question is whether a jury could have found a lack of an intent to defraud. And in a case like this, where there is no evidence of any losses whatsoever, the defendant is, you know, the whole scheme requires him to continue to pay off the card so that nobody loses any money so that he can continue to use the card, that in that particular scenario, given those facts, that a jury could find that he did not have an intent to afflict any type of harm or injury to property rights. So the government relies on this 11th Circuit case cloth, which said as to 1029.82, it didn't matter whether he made payments on the card. That does not detract from the fact that the lender, the credit issuer in that case, was defrauded. And I have two points as to cloth, besides that it's obviously 11th Circuit. Number one is that was a sufficiency of the evidence case. And again, I'm assuming for the sake of argument that there was sufficient evidence here. We're talking about whether a jury could have found in favor of Mr. Brown on that issue. So we're looking at, I think we've said the standard is a reasonable probability that it affected the outcome of trial. So we're saying did the instructional error, which is that it said, intend to deceive or cheat, which was wrong, and whether that error gave rise to a reasonable probability that the outcome of trial would have been different if the instruction had been correct. So I'm not understanding your attempt to make a distinction between sufficiency of the evidence and what the jury could have found. Help me understand that. Okay. Well, that's why we cited heavily the Murphy case. The Murphy case, this court held that the evidence was sufficient as to the element, as to the element that was misinstructed. There was sufficient evidence to sustain the verdict. But with respect to the instructional error, there was at least a reasonable possibility that the jury would not have found the element based on the weak evidence that the government had presented. The government presented sufficient evidence of the element, but they didn't present overwhelming evidence as to that particular element. And therefore, there was prejudice. And that's what I think the difference is between a sufficiency- Well, and that's why I wanted to hear your theory as applied to the facts of this case. Is it that because he continued to pay the bills, and so therefore there wasn't any intent to cheat? Correct. And again, the government's, I think their position at trial, although it was never clear, was that the victims of the fraud was the airline company and the rental car company that he used a credit card for. There was no evidence that he intended to cheat them, that he intended not for those bills to be paid. Well, the entire scheme is cheating because you're basically applying for a credit card under a false identity. They're issuing that credit card to you with the assumption that you are who you say you are. And now we're shifting to the victim being the credit card company, I guess, American Express. So Tihani, which is also cited by the government, which was a different, it was for a California law, not for 1029A, but that says both the credit card company and the person who receives, who takes the false credit card are defrauded. So why can't it be both? Does it matter? Well, I guess they could proceed under both if they wanted to. They could try to make that. I mean, in that particular case, this court was evaluating a California state statute. Right. But it was still looking at intent to defraud. So it was looking at the same, I guess, mens rea there. Well, that statute actually was different because I believe the language in that statute only required an intent to deceive, not an intent to defraud. And that's a fundamental distinction that this court has made, is that there's a difference between the intent to deceive and an intent to defraud. But be that as it may, if the victim is American Express, this court in Lewis has said that the right to make an informed lending decision, that does not in and of itself automatically mean that a jury would have to find an intent to defraud. And in that case... What is your best case? Is it Milhiser? I think, well, I think Milhiser is very good. I think Lewis is very good. I think Yates. I mean, we've cited, I mean, in Milhiser, I cited the same cases in Milhiser that I've cited here, and they were all generally adopted. The nine circuit cases would be Milhiser, Bruckhausen, and Yates. And then there are cases from other circuits like Guertin, which is a DC circuit case. Takalov is an 11 circuit case. Sadler is a six circuit case. And all these cases are making a distinction between an intent to deceive and an intent to defraud. When, just because a defendant intends to deceive somebody and that person turns over money or property, that does not necessarily mean that there was an intent to defraud or that the victim has been defrauded. And we believe that the facts of this case at least present a plausible basis that a jury could have found a lack of an intent to defraud. They could have... Let's even assume that the jury clearly would have found an intent to deceive. That doesn't mean that they necessarily would have found an intent to defraud when nobody lost any money. There was no evidence that anybody lost any money. Nobody from American Express testified that somehow Mr. Brown's credit rating was less than Michael Watley's credit rating. If anything, I think the evidence suggests that Mr. Brown had a lot more money and probably had a higher credit rating than Mr. Watley. None of that type of evidence was introduced into this record. Nobody from American Express testified, this is what we use as our matrix for lending out from issuing a credit card and what rates we determine. None of that evidence is in the record at all. I mean, that's because the government proceeded under an overbroad theory, which is what happened in Millhiser. Their theory was simply, if the defendant intended to deceive, then there was fraud and that's it. And they never presented the evidence to establish that American Express itself was defrauded or anybody else was defrauded. None of the victims are alleged victims and we're not clear who the government's theory was testified in this case. Mr. Coleman, I'm going to push back a little bit. You say the sufficiency of the evidence is not in doubt, yet you're kind of arguing the sufficiency of the evidence on this cognizable property right that would need to be lost in the cheat situation. I mean, looking at Yates and Millhiser, there was discussion about the ethereal right to accurate information. Isn't that really the essence of your claim here, that this was inaccurate information at best, not a cheating, a loss, some cognizable property interest? That's correct. I mean, both those cases, Millhiser, Yates, and I think Simonelli from the Supreme Court, they all make clear that the right to have information is not a cognizable property. In Lewis, the jury instruction actually used that language, the right to accurate information. Clough just said that, I'm coming back to Clough because it was the closest case on point, even though it's out of circuit, just said that it's irrelevant that the lying credit seekers subsequently made payments on the card because in each application for a credit card, he intended to defraud the banks by presenting to them that they were dealing with persons other than himself. So to agree with you, we would have to depart from Clough, is that correct? Well, I don't think so. First of all, Clough, one of the problems in the analysis in Clough is that it interpreted intent to defraud as the intent to deceive or cheat. So Clough is using the wrong definition of intent to defraud. That's the first problem with Clough. And cases since Clough have made clear that it's not intent to deceive or cheat, it's an intent to deceive and cheat. So that's the first problem with Clough. I don't think that this court would be creating a circuit split with Clough, though, because again, Clough is a sufficiency of the evidence case. So if the court were to say here, the evidence was sufficient to convict, that wouldn't create a split with Clough, but it would say, but the instruction was incorrect, and there was at least a plausible basis for a jury to not find the intent to defraud element. And that's it. I mean, I would take issue, I guess, when Clough says that it's irrelevant, I don't that whether, you know, anybody lost any money or whether the defendant intended to pay all the credit card. I don't know that that's accurate. I think it is relevant. I mean, it may not be outcome determinative as to whether there is sufficient evidence, but I think certainly that type of evidence would be relevant in determining whether a defendant had an intent to deprive or harm somebody in their property rights. So I think for all those reasons, the third prong of the plain error test is satisfied, which means the fourth prong really is satisfied as well. I see I have about two minutes. Is that for rebuttal? Yes, thank you. Okay, of course. I'll hear from the government. May it please the court. Kevin Barber, United States. So I'm happy to start with the issue that the panel has been discussing so far with my friend, Mr. Coleman. So I take him to be repeating the central point of his brief on the intent to defraud issue, which is that you cannot commit credit card fraud if you intend to pay the bills that your fraudulent credit card transactions are generating. I think that this court's precedents foreclose that theory. As a threshold matter, there's also no evidence in the record that Mr. Brown did pay his credit card bills. And as we point out in our brief, it is the appellant that pays the price for the inadequacy of the record on plain error review, which is what we're working with here. But even setting that aside, the court's precedents do make clear cases like the Tajani case, that intent to defraud is not defeated just because the fraudster intends to repay the money that he has obtained by deception. The key is for intent to deceive and cheat. Was there, as the court put it in the Saney case, intent to deprive the victim of money or property by deception? And I think the record made plain, and it left the jury no room to disagree, that Mr. Brown did intend to obtain money or property through deception, money or property belonging both to American Express, because each time he used the counterfeit card, money left American Express and went to the sellers of the goods and services that he purchased. And then also he intended to deprive those sellers of their goods and services based on deception. So as the Tajani case confirms, he doubly committed fraud against both of those sets of victims. Can you discuss Millhiser and how that would fit into the facts of this case? Sure, I'm happy to discuss Millhiser. As counsel points out, there's potentially multiple victims here. You didn't have the benefit of the correct instruction to sort of focus the jury on which victim the government's talking about and how the evidence fits as to each distinguishable from this case, because in that case you had essentially an arm's-length transaction for goods. There it was deception to induce purchases of printer ink, but the court said that there was no fraud there because the alleged victims, the buyers of the ink, got exactly what they wanted. They got the full benefit of their bargain. The government obviously disagrees with the court's analysis in Millhiser, but I think it's readily distinguishable from credit card fraud and related forms of fraud because in the credit card fraud context, the identity of the cardholder is much more fundamental and inherently critical to the nature of the bargain with the credit card issuer. And if you look at Millhiser itself, I think it's at page 944 of the court's opinion there, it distinguishes a case involving, I think it's called Tarallo or Tarallo, case involving the investment context, where again, the identity of the person who was soliciting investments was considered much more important to the nature of the bargain than when you're just purchasing a commodity and you get exactly what you bargained for. So I think that Millhiser is not relevant here. Millhiser also was not a plain error case, which we had earlier. I'm not sure if I understand, like how much distance is enough to go one way versus the other? I mean, when you're calling somebody up and representing who you are, that seems pretty germane. Yes. I mean, I certainly agree. And I have grave concerns about the correctness of Millhiser's analysis. I was particularly concerned with how it treated the Bruckhausen case, which is another case that my friend, Mr. Coleman, has cited. Bruckhausen stands for the proposition that the right to control the destination of your products after selling them is not a cognizable property interest under the fraud statutes. But if you look at the critical two-judge concurrence that was filed by Judge Fernandez there and joined by Judge Kaczynski, they confirmed that setting aside that theory that the government pressed about the right to control the destination of the products, if you use deception to induce a seller to make a sale that they may not otherwise have made, that is still fraud. And the Millhiser court didn't pick up on that aspect of Bruckhausen. So I wouldn't want the court to expand on Bruckhausen. But agree or not, you have to follow and distinguish it. Absolutely. But I would distinguish it on the grounds that I did before, which is that in this particular context, when we're talking about this kind of transaction and this sort of bargain, it's kind of awkward to even call it a bargain here when you're talking about a credit relationship with an entity like American Express. But in that context, the identity of the cardholder is fundamental. Credit card issuers always need to know who they're dealing with. Whereas, you know, if you're just selling a particular commodity out of a storefront or something, it's considerably less important who you're actually dealing with if everybody's getting what they're bargaining for. Millhiser sort of concedes that in its distinction of Torello, which I think that the lie in that case was the person seeking investment said, I'm in my office in D.C. and we held that that was sufficient to to defraud, to the intent to defraud. Because when you're making an investment, you want to know the size of the entity you're investing in. And so it was essential to the transaction. So I didn't see Millhiser as overruling that line of reasoning. I think that's exactly right. I think that this case is distinguishable from Millhiser on much the same basis that Millhiser itself distinguished that line of case law, because I think in this context, the identity of the parties to the transaction is so fundamental. And that also goes not just for American Express as the victim. It also goes for some of the other victims here. So Mr. Brown was using this counterfeit card to book flights and book rental cars. And, you know, those entities, as opposed to like the printer ink type example, those kinds of sellers, they also really need to know who they're dealing with because they're entrusting a car to the person or they're trusting a seat on an airplane, which is a highly controlled, secure environment. So I think that this case is distinguishable on those grounds as well. It may also be helpful just to discuss another couple of the cases that have been under discussion today. There was the Coff case, and I think Judge Ikuda mentioned that. I think that is a very helpful case here. It's very closely on point. Even though it's out of circuit, I think it was favorably cited by this case, which is the case that established the frontline error here in the first place. And my friend, Mr. Coleman, highlighted the fact that it's a sufficiency case, but it was talking about the legal principle that intent to repay in the credit card fraud context does not defeat credit card fraud. And if you follow that principle to its limit, it would really blow a giant hole in section 1029. That would mean that any of our personal information could be used by anyone to obtain a counterfeit credit card. They could run up all kinds of bills in our name. And then as long as they paid the bill or even just intended to pay the bill, you wouldn't have credit card fraud. I think that's a completely untenable reading of section 1029. And then the Tajani case, I also wanted to highlight. I think Mr. Coleman suggested that the statute there was limited just to intent to cheat. And so it doesn't tell us anything here. But if you look at the court's opinion there, the question was whether the state law was a crime of moral turpitude. And the question as distilled by the court there was, did the state statute necessarily entail intent to defraud as defined at the common law? And the court correctly defined intent to defraud as requiring intent not just to deceive, but also to obtain money or property through that deception. So you have to read that opinion closely. But the court did correctly define it. And then it explained very helpfully, as to this case, why credit card fraud of the kind that we're dealing with necessarily entails intent to defraud. And therefore, in that case, constituted a crime involving moral turpitude. And then I also just wanted to highlight the fact that I think maybe Judge Pataglia might have picked up on this. But my friend seems to concede that there was sufficient evidence to support the intent to defraud here. I don't know how, if the fundamental legal theory that the government was proceeding on was incorrect, as Mr. Coleman has argued, I don't see how the evidence could be sufficient and yet then enable him to prevail under a plain error review at prong three. So I don't think that's correct either. I think that's all the matters that I had to discuss from my friend's argument. But I'm also happy to take any further questions that the court has. Assuming that we go on to consider count five, can you address the effect of Dubin on our analysis? Sure. So Mr. Brown has raised a couple different Dubin points. The first is the idea that the instructions given here were incorrect because they did not require the jury to find that the identification was stolen. The Dubin decision does not disturb this court's precedence that already established that the identification need not be stolen. There's a lot of language in Dubin saying, in trying to interpret what use means in connection with possess and transfer. And in connection with trying to define use, the opinion talks about it's usually associated with theft and identity theft. I don't know what comes out and says that it has to be a stolen item, but it does have some language. So can you help us understand how that works? Sure. Yes. So first of all, this is a threshold matter. I think it's important that the standard for finding that Supreme Court precedent has abrogated this court's precedent is pretty high. So we're going to need some sort of clear language in Dubin to do that. And I don't think that the language that is in Dubin gets you there. Saying that the text of the statute connotes theft or that theft is at the core of the statute doesn't mean that that exhausts all the statute's applications. And in a future case, maybe the court will go there, but the circuits are in broad agreement that actual theft is not required. Identity theft is getting at, that phrase is getting at, a refers to without lawful authority and lawful would be surplused if it required theft in every case. And of course, the statute is directed not just at situations where identifications are stolen, but also where identifications are used perhaps with permission, but unlawful permission, which makes it harder to detect and prevent crime when people are using other people's identifications. So I don't think anything in Dubin necessarily resolves that. And so I think this court's precedents are intact on that front. And the instructions were not erroneous on that ground. Obviously, there wouldn't be any prejudice here either, because it was clear that the ID was stolen. Mr. Watley clearly testified that he never gave permission for the ID to be used. And then the other matter is the crux matter. I don't think that Dubin clearly establishes that you would need a crux instruction in a case arising under the possesses prong. In any event here, there would be no prejudice again, because the use of Mr. Watley's identification was clearly at the crux of his underlying predicate offense, which was the credit card fraud. It was absolutely central to that. It was not an ancillary feature thereof, like the use of the identification in the Dubin case. So we don't think that Dubin provides any for reversing the count five conviction. I also wanted to mention there was some confusion in the briefing about the standard of review for the Dubin claims, because they're based on a change in the law. Our brief explains why any purported exception to plain error for changes in the law is invalid. And I also wanted to point the court today to a couple of cases in which this court has actually already said that. There's the Christensen case, that's 828 F3rd 763, pin site 779, which says, quote, plain error review applies on direct appeal, even where an intervening change in the law is the source of the error. And then that's citing a case called Polisamen 641 F3rd at 404. So that purported exception to plain error review does not apply. We are on plain error. But for the prejudice reasons I've also discussed, even if de novo review were applying, Mr. Brown would still not get relief on that count. There are no further questions? No questions. I'm going to leave it there and ask the court to affirm. Thank you. Okay, thank you. You have a few minutes left for rebuttal. Thank you. I'd like to address the Dubin issue, since I didn't get to talk about that initially. With respect to whether the identity has to be stolen, putting aside the actual language in Dubin that very strongly suggests that the entire or one of the main bases for the reasoning in Dubin was the title of the statute. The title of the statute is aggravated identity theft. And so the Supreme Court said, you have to interpret the statute in accordance with its title. And the theft portion of that title clearly reveals that the identity has to be stolen. So can you help me with footnote 8 of Dubin? Because footnote 8 of Dubin clearly holds open the without lawful authority language and says, we're not going to address it. It says what the parties argued. And of course, our opinion, which says that you don't have to have theft, as soon as Alvarez, is relying on the without lawful authority language. So what do we do about footnote 8 in your theory? Well, I think also in footnote 8, the Supreme Court basically said that the government at times conceded that the identity had to be stolen. And they pointed to parts of the Solicitor General's brief that appeared to concede that. So footnote 8 itself is a little bit unclear on this. The government's position has certainly been unclear because sometimes they've virtually conceded that the identity has to be stolen. But I think putting aside the without lawful authority language, the court doesn't even have to rely on that. You can just look at the title of the statute, which is aggravated identity theft, which is that's what the Supreme Court did in Dubin. And they said the title of the statute is pretty clear. This has to be stolen identity. So does that make without lawful authority surplusage? Well, I don't think it's surplusage. I think it just further confirms that the identity has to be stolen or you have to exceed the authority that's been given to you to use the identity. And that may be where the without lawful authority comes in, that if you're exceeding the authority that's been given to you, that is a form of stealing the identity. So I think it's all mutually reinforcing. I don't know that one is surplusage versus the other. It's all reinforcing that the identity has to be stolen. The government had indicated that all the circuits agree that the identity doesn't have to be stolen, but there's no case after Dubin that holds that. And that's the big question. What did Dubin mean? And I think Dubin, both its reasoning and its actual language, is very clear that this court's precedent is no longer valid. I do think there was also prejudice because the defense had a theory that the victim allowed people to use his identity if they would buy him beer. They wanted to try to get into that evidence, but they were basically shut down. So I do think that if this theory can be, if that is a viable defense, that there is prejudice, even assuming plain error review applies. Thank you. And we thank both sides for their arguments. The case of United States v. Gaston Brown is submitted.
judges: IKUTA, NGUYEN, Battaglia